An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

ROGELIO MARTINORELLAN A/K/A
ROGELIO MARTINEZ-ORELLANO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 58904



**FILED**

SEP 2 6 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of burglary while in possession of a deadly weapon, attempted robbery with the use of a deadly weapon, and battery with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Susan Scann, Judge.

Appellant Rogelio Martinorellan[1] entered a smoke shop and attempted to rob Jung Lee, the store's owner. As Lee was trying to tell Rogelio to follow him to the cash register, Rogelio attacked Lee with a knife. While trying to defend himself, Lee was stabbed in the upper arm. Rogelio fled the scene without obtaining any money.

In filling out his voluntary statement, Lee did not give Rogelio's physical description. However, the next day when Lee was cleaning his store, he found Rogelio's employee badge. Lee immediately recognized the person in the photo as the person that attempted to rob

---

[1]The judgment of conviction shows the defendant's name as Rogelio Martinorellan. However, throughout the trial and on appeal, Rogelio is referred to as Rogelio Martinez-Orellano. We follow the name that appears on the judgment of conviction.

13-28818

him. Lee called the crime scene investigator assigned to the case, and she came to the store to retrieve the badge.

Several weeks later Rogelio was arrested. After a nine-day trial, the jury found Rogelio guilty of all counts. This appeal followed. The issues on appeal are whether: (1) the district court erred in its method for selecting the alternate jurors, (2) the district court erred in allowing the jury to have a videotaped portion of the trial played back, (3) the State engaged in prosecutorial misconduct during its closing argument when it commented on its burden of proof, and (4) the district court abused its discretion in denying a mistrial after the State introduced Rogelio's booking photograph and asked him to admit that it was taken after he was arrested.[2] As the parties are familiar with the facts, we do not recount them further except as necessary to our disposition.

*Alternate juror selection*

Rogelio argues for the first time on appeal that the district court erred in its method for selecting alternate jurors. He contends that

_____

[2]Rogelio also raised the following issues on appeal: (1) whether the district court erred in granting the State's for-cause challenge and denying Rogelio's for-cause challenges during voir dire, (2) whether the district court abused its discretion in rejecting Rogelio's *Batson* challenge to the State's use of peremptory challenges, (3) whether the district court erred in dismissing a juror and in failing to admonish the jury regarding deliberations before and after the alternate juror was seated, (4) whether the district court erred in not requiring a key witness to use an interpreter, (5) whether the State violated *Brady* by failing to disclose an officer's notes, (6) whether the district court abused its discretion in admitting hearsay testimony, (7) whether the district court abused its discretion in rejecting a proposed jury instruction stating that it was improper for witnesses to discuss their testimony with other witnesses, and (8) whether cumulative error warrants reversal. We conclude these issues are without merit and will not discuss them further.

the district court's use of a lottery system to select the two jurors that would serve as alternates denied him the right to effectively use his peremptory challenges. He further contends that, because the district court violated NRS 175.061, the alternate who was called on to replace the excused juror was improperly chosen. When there was no objection at trial, we review the district court's selection of alternate jurors for plain error. *Moore v. State*, 122 Nev. 27, 36-37, 126 P.3d 508, 514 (2006).

NRS 175.061(3)(a) requires that alternate jurors be drawn in the same manner as regular jurors. The statute also specifically dictates that "[e]ach side is entitled to one peremptory challenge in addition to those otherwise allowed by law . . . . The additional peremptory challenges may be used against an alternate juror only, and the other peremptory challenges allowed by statute may not be used against an alternate juror." NRS 175.061(5).

Because criminal juries are drawn in the same way that civil juries are drawn, NRS 175.021(1), we look to NRS 16.030 for guidance. NRS 16.030(4) allows the district court to

> draw a number of names to form a panel of prospective jurors equal to the sum of the number of regular jurors and alternate jurors to be selected and the number of peremptory challenges to be exercised. . . . When a sufficient number of prospective jurors has been qualified to complete the panel, each side shall exercise its peremptory challenges out of the hearing of the panel by alternately striking names from the list of persons on the panel. After the peremptory challenges have been exercised, the persons remaining on the panel who are needed to complete the jury shall, in the order in which their names were drawn, be regular jurors or alternate jurors.

In *Moore*, the district court violated NRS 175.061(5)[3] because it did not require the parties to use the peremptory challenge solely against the possible alternate jurors. 122 Nev. at 36-37, 126 P.3d at 514. This court determined that the error did not affect Moore's substantial rights and therefore affirmed his conviction on that issue. *Id.* at 37, 126 P.3d at 514. This court reached a similar conclusion in *Morsicato v. Sav-On Drug Stores, Inc.*, 121 Nev. 153, 156 n.2, 111 P.3d 1112, 1115 n.2 (2005). In *Morsicato*, this court determined that because the parties failed to object to the district court's use of a lottery system to pick alternate jurors, the failure to follow NRCP 47(b) was not prejudicial.[4] *Id.*

Here, the district court used the same type of lottery system used in *Moore*. Following the language of NRS 16.030, the district court properly selected a panel of 24 jurors and, after questioning the venire members, allowed each party to use its 5 peremptory challenges—4 general challenges and 1 additional for the alternates. But the district court randomly selected two jurors to serve as the alternates, instead of selecting the last two prospective jurors called. NRS 16.030(4).

This procedure conflicts with both NRS 16.030 and NRS 175.061(5) because each party's peremptory challenge that was supposed to be used to excuse an alternate juror was used to excuse a primary juror. However, as determined in *Moore* and *Morsicato*, the error did not affect Rogelio's substantial right to a fair trial because he clearly did not exercise his peremptory challenges on either of the two men who were selected as

---

[3]*Moore* cites NRS 175.061(4), which was renumbered to NRS 175.061(5) in 2005. *See* 2005 Nev. Stat. ch. 110, § 1, at 306.

[4]NRCP 47(b) has almost identical language as that of NRS 175.061.

alternate jurors. *See Moore*, 122 Nev. at 36-37, 126 P.3d at 514; *Morsicato*, 121 Nev. at 156 n.2, 111 P.3d at 1115 n.2. Furthermore, he did not challenge either of the jurors for cause. Consequently, the district court did not commit plain error in failing to follow the proper procedures for selecting alternate jurors.

*Video playback*

For the first time on appeal, Rogelio contends that showing the jury video playback of a detective's testimony was improper because it intensified the effect of the hearsay statements. The State contends that video playback of the detective's testimony is not plain error, as this is an issue of first impression in Nevada. Further, even if there were errors in allowing the jury to view a video playback and not admonishing the jury with respect to the video playback, the error did not affect Rogelio's substantial rights.

When a defendant does not object to an issue at trial, it is reviewed for plain error on appeal. *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). "In conducting plain error review, 'we must examine whether there was 'error,' whether the error was 'plain' or clear, and whether the error affected the defendant's substantial rights.'" *Id.* (quoting *Baltazar-Monterrosa v. State*, 122 Nev. 606, 614, 137 P.3d 1137, 1142 (2006)).

As technology improves and economic restraints on district court resources increase, district courts must have wide discretion in allowing video playbacks to juries that request them. *Miles v. State*, 97 Nev. 82, 84, 624 P.2d 494, 495 (1981); *see also United States v. Sims*, 719 F.2d 375, 379 (11th Cir. 1983) (determining that district courts have the same discretion in allowing readbacks or video playbacks). Here, the jury requested a readback of a portion of the detective's testimony. The jury

saw roughly 20 minutes of Rogelio's cross-examination of the detective. The State asked several questions on redirect, but the majority of the playback consisted of the cross-examination testimony. The camera view was switched from the back of the room when the detective was speaking to the front of the room when the attorneys were speaking. As Rogelio argues, the camera angle is not fixed at some point above the jurors' heads. However, the camera angles in the video playback do not show anything that the jurors would not have been able to see from the jury box.

The district court asked the jury several times if it wanted to continue watching the video playback, and the jury either stated that it did or did not. After it stated that it was finished watching the video playback, the jury returned to the deliberation room and continued deliberating. The jury was not able to take the video into the deliberation room. The playback was done in open court, and the district court made a precise record of what was played. However, the district court did not (1) redact sidebars or objections, (2) playback the relevant direct and cross-examinations, or (3) instruct jurors not to place undue emphasis on the selected testimony.

Although the district court did not give a specific admonition following the playback, the playback was not unduly prejudicial to Rogelio because it focused primarily on his cross-examination of the detective. Prejudice is also not evident because the jury continued deliberating for almost two hours after the playback. As a result, the district court did not commit plain error in allowing a video playback of the detective's testimony. Thus, Rogelio's substantial rights to a fair trial were not violated.

 

*Prosecutorial misconduct*

Rogelio next contends that the prosecution engaged in improper commentary during its rebuttal closing argument when it discussed the reasonable doubt standard, commented on Rogelio's choice to testify, stated that Rogelio had to testify to prove that he did not commit the crimes charged, and equated Lee's experience while being cross-examined to a painful tooth extraction. The State responds by pointing out that the district court instructed the jury to follow the jury instructions and not consider the objected-to comments. We conclude that although the statements were careless and partially inappropriate, any misconduct was harmless.

We review alleged prosecutorial misconduct by engaging in a two-step analysis. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). First, we determine if there was misconduct; second, we determine whether the error was harmless. *Id.* If the error is of a constitutional nature, then the prosecution must prove, "beyond a reasonable doubt, that the error did not contribute to the verdict." *Id.* at 1189, 196 P.3d at 476. On the other hand, if the error was not of a constitutional nature, reversal is warranted "only if the error substantially affect[ed] the jury's verdict." *Id.*

This court has repeatedly instructed the bar "not to attempt to quantify, supplement, or clarify the statutorily prescribed standard for reasonable doubt." *Evans v. State*, 117 Nev. 609, 631, 28 P.3d 498, 514 (2001). In *Evans*, this court determined that it was improper for the prosecution to discuss the reasonable doubt standard, but that the error was harmless because the jury instructions contained the proper definition of the standard. *Id.* at 631-32, 28 P.3d at 514.

Here, the State referenced the reasonable doubt standard, Rogelio objected, and the district court sustained the objection. Further, there was a jury instruction that gave the appropriate definition of the reasonable doubt standard. Therefore, the misconduct, like that of the misconduct in *Evans*, was harmless.

We now turn to the State's comment regarding Rogelio's decision to testify, wherein the State implied that it was the only way for Rogelio to show that he did not commit the crimes. Generally, it is improper to comment on the defense's decision to present evidence or witnesses because it improperly shifts the burden of proof to the defendant. *Whitney v. State*, 112 Nev. 499, 502, 915 P.2d 881, 882 (1996). "The tactic of stating that the defendant can produce certain evidence or testify on his or her own behalf is an attempt to shift the burden of proof and is improper." *Barron v. State*, 105 Nev. 767, 778, 783 P.2d 444, 451 (1989). It is also improper to imply that a witness lied. *Anderson v. State*, 121 Nev. 511, 516, 118 P.3d 184, 187 (2005).

In this case, the State repeatedly attempted to argue that Rogelio had to take the stand to testify in his own defense because there would be no other way to explain the facts presented during trial. After the district court sustained Rogelio's objection, the State continued with its rebuttal argument and stated that, when pushed, Rogelio testified that he did not know or did not remember what happened. Rogelio's objection to this statement was also sustained. It was only when the State noted that the jury would have to discredit Lee's entire testimony in order to find Rogelio not guilty that Rogelio's objection was overruled.

These statements border on an improper attempt to shift the burden to Rogelio. *Whitney*, 112 Nev. at 502, 915 P.2d at 882; *Barron*, 105

Nev. at 778, 783 P.2d at 451. The State asked the jury to look at the evidence it presented and Rogelio's inability to give a reasonable alternative explanation of the facts without testifying himself. However, Rogelio objected to these borderline statements and the objections were sustained. The jury was also instructed not to lend credence to statements or evidence that was objected to. Thus, we assume that the jury followed the direction of the district court and that any misconduct was harmless. *See Evans*, 117 Nev. at 631-32, 28 P.3d at 514 (concluding that improper reference to the reasonable doubt standard was harmless because the jury was given the proper standard in its instructions).

The State's final statement comparing Lee's cross-examination to that of a painful tooth extraction is also not prosecutorial misconduct. It is improper to appeal to a jury's sympathies in order to obtain a conviction. *Pantano v. State*, 122 Nev. 782, 793, 138 P.3d 477, 484 (2006). Here, the State simply used an analogy that Rogelio used in his opening statement. Further, although the statement may have caused some emotional response, the comment did not refer to the victim's right to justice and was not an attempt to inflame the jury into returning a conviction. Rogelio objected to the State's improper statements, the objections were properly sustained, and sufficient instruction was given to the jury. Therefore, any error was harmless. *Valdez*, 124 Nev. at 1188, 196 P.3d at 476.

*Booking photograph*

Rogelio argues that the district court abused its discretion in denying his motion for a mistrial following the State's introduction of Rogelio's booking photo. Both the district court's admission of evidence and denial of a motion for a mistrial are reviewed for an abuse of

discretion. *Ramet v. State*, 125 Nev. 195, 198, 209 P.3d 268, 269 (2009); *Rudin v. State*, 120 Nev. 121, 142, 86 P.3d 572, 586 (2004).

Generally, all relevant evidence is admissible. NRS 48.025. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. However, "relevant[ ] evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice." NRS 48.035(1). A booking photo does not necessarily have a prejudicial effect when the "jurors ha[ve] no reason to assume that it had been taken in any other case but the one for which [a defendant is] being tried." *Browning v. State*, 120 Nev. 347, 358, 91 P.3d 39, 47 (2004).

In this case, the State used Rogelio's booking photo to show the jury that, although his hair was longer at trial, at the time of the crime and Rogelio's arrest he had an almost completely shaven head. This evidence is relevant because it bolsters Lee's identification of Rogelio following the crime. NRS 48.015; NRS 48.025. Rogelio repeatedly accused Lee of fabricating his recollection of the events surrounding the crime, including Rogelio's identification. As stated in *Browning*, a booking photo is not prejudicial when there is no danger that the jury will infer that the photo was taken with respect to a different crime. 120 Nev. at 358, 91 P.3d at 47; *see* NRS 48.035(1). Here, the State properly laid a foundation in the jury's presence for the booking photo, explaining that it was taken after Rogelio was arrested for the crimes for which he was on trial. Therefore, the district court properly admitted Rogelio's booking photo for

the State's identification purposes. Accordingly, the district court did not abuse its discretion in denying Rogelio's motion for a mistrial.

We therefore

ORDER the judgment of the district court AFFIRMED.

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta


cc:    Hon. Susan Scann, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk