# IN THE SUPREME COURT OF THE STATE OF NEVADA

JAMES MICHAEL BIELA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71427

FILED

APR 22 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order denying appellant James Biela's postconviction petition for a writ of habeas corpus. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

In the early morning hours of January 21, 2008, 19-year-old Brianna Denison was sleeping on a couch in a friend's residence near the University of Nevada, Reno (UNR) campus. Biela entered the residence through an unlocked door, pressed a pillow to Brianna's face, and removed her from the house. Biela then sexually assaulted and murdered her. Weeks later, Denison's remains were discovered in a ravine in south Reno. During the investigation into Brianna's murder, Biela was linked to the sexual assaults of two other young women near UNR—E.C. and A.C. He was charged with offenses related to all three victims. A jury convicted Biela of first-degree murder, sexual assault with the use of a deadly weapon, two counts of sexual assault, and first-degree kidnapping, and sentenced him to death. This court affirmed the judgment of conviction and death sentence. *Biela v. State*, Docket No. 56720 (Order of Affirmance, August 1,

19-17615

2012). Biela filed a timely postconviction petition for a writ of habeas corpus alleging that he received ineffective assistance of counsel, which the district court denied after conducting an evidentiary hearing. In this appeal, Biela claims that the district court erred in rejecting his ineffective-assistance claims and that cumulative error warrants reversal. We affirm.

"A claim of ineffective assistance of counsel presents a mixed question of law and fact, subject to independent review," *Evans v. State*, 117 Nev. 609, 622, 28 P.3d 498, 508 (2001), *overruled on other grounds by Lisle v. State*, 131 Nev. 357, 366 n.5, 351 P.3d 725, 735 n.5 (2015), but the district court's purely factual findings are entitled to deference, *Lara v. State*, 120 Nev. 177, 179, 87 P.3d 528, 530 (2004). To prove ineffective assistance, a petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness (deficient performance) and (2) a reasonable probability of a different outcome but for counsel's deficient performance (prejudice). *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Kirksey v. State*, 112 Nev. 980, 987-88, 998, 923 P.2d 1102, 1107, 1114 (1996).

*Ineffective assistance of trial counsel—Failure to challenge DNA evidence*

Biela argues that the district court erred in denying several ineffective-assistance claims related to trial counsel's failure to challenge DNA evidence. At trial, experts testified that Biela and his male paternal relatives could not be excluded from a DNA profile developed from the vaginal, external genitalia, and lip swabs collected from E.C. Biela was also the source of sperm recovered from Denison's perineum, male DNA found on the vaginal introitus swab, and profiles developed from the underwear found with Denison's remains and the door handle at the residence where

 

Denison was abducted. The DNA profile developed from the door handle matched the DNA profile developed from E.C.'s swabs. Biela asserts that trial counsel should have challenged the State's failure to disclose the underlying physical evidence, DNA extract, and bench notes in a timely manner; more strenuously challenged the DNA evidence; and objected to the State's shifting the burden of proof while questioning the defense expert.

*Failure to assert Brady violation based on untimely disclosure*

Biela argues that trial counsel should have asserted that the State did not disclose DNA evidence in a timely manner in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). When the defense expert, Dr. Miller, tested the perineum swab, the results indicated a peak at allele 17 that did not match Denison or Biela. Dr. Miller opined that the peak could denote the presence of a third party's DNA. Biela suggests that if the sample had been disclosed earlier, the source of the peak could have been detected, perhaps proving the presence of a third-party's DNA.

Biela has not shown a meritorious *Brady* claim and therefore the district court properly rejected his related ineffective-assistance claim. *Brady* obliges a prosecutor to disclose evidence favorable to the defense when that evidence is material to guilt, punishment, or impeachment. 273 U.S. 83; *Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000). Biela failed to show that the evidence was exculpatory or material. The postconviction expert testimony does not support the conclusion that the failure to disclose the DNA samples in a more timely fashion destroyed exculpatory evidence. Three DNA experts testified about the legitimacy of the allele 17 peak. Only one of those experts considered the peak legitimate. Others considered the peak too low to be an accurate representation of an

 

existing allele and even if it rose above the threshold, a single peak would more than likely be the result of contamination or an artifact of the PCR reaction from processing lower levels of DNA. Even the defense expert who found the allele peak did not consider it reliable. Moreover, all the experts agreed that the presence of the additional allele, even if accurate, does not exclude Biela as the source of the male DNA on the perineum sample. They thus agreed that the presence of more alleles or another profile would not have affected the conclusion that Biela's DNA, particularly his sperm, was discovered on Denison. And even if the samples were disclosed earlier, Biela did not demonstrate a reasonable possibility that he would not have been convicted considering the other evidence: his DNA was found on the door handle of the home where Denison was abducted, on swabs collected from Denison's perineum and vaginal introitus, and on underwear recovered near her body; his cell phone records placed him in the area of the abduction; and fibers found on Denison's socks matched his vehicle.

Biela also did not demonstrate that the State withheld any evidence by improperly consuming the swabs or not disclosing the lab's documentation. While the crime lab tries to save some of the sample, its testing will consume the entire sample when dealing with low level DNA. In this case, the crime lab's testing consumed the entire introitus sample because the presumptive tests did not reveal the presence of seminal fluid and the analysts believed that half the sample would not have yielded interpretable results as to the male DNA. And because the examiner found only 4 sperm cells on the perineum sample slide, he elected to use the complete sample to obtain a DNA profile from the sperm, which he did. As to the documentation, Biela's expert acknowledged that he was mistaken

and had received the requested notes and data. He was able to review the allele calls, raw data, peaks, screening, and bench notes before the trial. Therefore, the district court did not err in denying this claim.

*Failure to challenge DNA evidence*

Biela argues that trial counsel should have more aggressively challenged the DNA evidence. He asserts that the district court's conclusion that trial counsel employed a reasonable strategy as to the DNA evidence, was not supported by substantial evidence.

Contrary to Biela's assertion, the district court did not rely solely on counsel's testimony that Biela had admitted that he was present at the residence where Denison was abducted. Rather, the court also relied on testimony that defense counsel conferred with an expert and they concluded that the crime lab's work appeared to be accurate. Given that testimony, we conclude that the district court did not err in determining that trial counsel made an objectively reasonable strategic decision not to more aggressively challenge the State's DNA evidence. Moreover, Biela did not demonstrate that he was prejudiced by counsel's strategy. He offered no evidence at the postconviction hearing that counsel could have presented to undermine the DNA and other evidence implicating him in the kidnapping, sexual assault, and murder. Therefore, the district court did not err in denying this claim.

*Failure to object to cross-examination as burden shifting*

During trial, defense expert witness Dr. Miller testified to his findings. On cross-examination, the prosecutor asked why Dr. Miller had not conducted the same tests as the crime lab on the samples that had been provided to the defense. Biela argues that this inquiry shifted the burden

 

of proof to the defense. The merit of the ineffective-assistance claim hinges on whether the State's inquiry was objectionable. We conclude that it was not.

The State improperly shifts the burden of proof to the defense by "commenting on the defense's failure to produce evidence or call witnesses." *Whitney v. State*, 112 Nev. 499, 502, 915 P.2d 881, 883 (1996). The State's cross-examination did not suggest that the defense had a burden to produce DNA evidence; rather, the questioning merely tested the extent of and basis for the defense expert's conclusions. As such, the inquiry was not objectionable. Because "[t]rial counsel need not lodge futile objections to avoid ineffective assistance of counsel claims," *Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006), the district court did not err in denying this claim.[1]

*Ineffective assistance of trial counsel—E.C. case*

*Sufficiency of the evidence*

Biela contends that trial counsel did not adequately challenge the evidence introduced to prove that he sexually assaulted E.C. He claims that trial counsel should have pointed out that E.C. did not provide accurate details about his truck, the fibers found on E.C.'s clothing did not match his truck, and her DNA was not found in the truck. We disagree.

E.C. was approached from behind, choked until she lost consciousness, driven to another location, and sexually assaulted. Her

---

[1]Biela also argued that appellate counsel should have raised this challenge to the prosecutor's cross-examination of Dr. Miller. As he failed to demonstrate that the questioning was improper, he did not demonstrate deficient performance based on appellate counsel's omission of this claim.

 

testimony about the attack is corroborated by evidence of her injuries and blood on the ground at the site of the attack. Although she could not identify Biela's face, E.C. described aspects of her attacker's physical appearance and grooming that were consistent with Biela. Other evidence also points to Biela as her assailant: he had fight training that included submission holds capable of rendering someone unconscious, and DNA consistent with Biela's DNA profile was found on E.C. Considering this evidence, the evidentiary weaknesses now pressed by Biela—all of which relate to the lack of evidence connecting Biela's truck to the attack on E.C.—were minor. For example, the absence of E.C.'s DNA in the truck does not mean she was never in the truck, particularly where police did not impound the truck until nearly a year after the attack and the truck had been traded and sold to a third party. Cross-examination about E.C.'s description of the truck also would not have significantly undermined her testimony and the evidence corroborating it. As she observed the truck at night after being choked unconscious, having her glasses broken, receiving a facial injury, and with her eyes partially covered by her hood, some inaccuracies are to be reasonably expected. Considering the strength of the evidence against Biela and the questionable value of highlighting minor weaknesses in the evidence that just as likely would bolster the case against him in other respects, Biela did not demonstrate deficient performance.

*Prosecutor's arguments*

Biela also argues that trial counsel should have objected to the prosecution's arguments that E.C. identified a Sirius radio in his truck and that cell phone records placed him in the area of E.C.'s abduction and assault as unsupported by the evidence.

SUPREME COURT
OF
NEVAOA

(O) 1947A

We conclude that counsel's performance was not deficient with respect to the prosecution's argument that E.C. identified a satellite radio in the truck. The prosecutor's argument was consistent with testimony and did not allude to facts not in evidence. In particular, E.C. testified that she had seen an aftermarket CD player and a blue and red stereo screen to the right side of the CD player. Also, Biela's girlfriend testified that when Biela owned the truck, they had a satellite radio unit that plugged into the truck's power outlet near the stereo. Considering that testimony, the prosecutor's argument was not objectionable. Trial counsel cannot be considered ineffective for failing to object.

In contrast, we agree with Biela that counsel should have objected to the State's argument that phone records placed Biela near the location of E.C.'s abduction and sexual assault because that argument was not supported by the evidence. The State did not introduce any evidence that Biela's phone pinged off of a cell tower near UNR and E.C.'s residence at the time of the attack on E.C. The fact that he used his cell phone several miles away about 90 minutes before the attack does not support the State's argument that the evidence placed him in E.C.'s neighborhood the same as it placed him in Denison's neighborhood, for which there was evidence that Biela's phone signal relayed through a tower close to Denison's neighborhood near the time of her abduction.

Regardless, Biela cannot demonstrate prejudice. Given the brevity of the prosecutor's argument, it did not "so infect[ ] the proceedings with unfairness as to make the results a denial of due process." *Hernandez v. State*, 118 Nev. 513, 525, 50 P.3d 1100, 1108 (2002). Moreover, significant evidence implicated Biela in the abduction and sexual assault of E.C. and

the court instructed the jury that counsel's arguments were not evidence. Biela did not demonstrate a reasonable probability that the result of the trial would have been different had counsel objected or addressed the argument. Therefore, the district court did not err in denying this ineffective-assistance claim.

*Ineffective assistance of trial counsel—Failure to challenge testimony about invocation of right to remain silent*

Biela argues that trial counsel should have objected to testimony about his refusal to answer a question during a police interview. We disagree. Biela's response to the question neither admitted nor denied any involvement in the murder and the State did not highlight the response in its closing argument. Thus, it was not unreasonable for counsel to decline to address it. Moreover, there is not a reasonable probability that the verdict would have been any different had the response been stricken, particularly considering the overwhelming substantive evidence of Biela's guilt: Biela's DNA was recovered from Denison's remains, underwear recovered with her remains, and the door handle at the residence where she was abducted; his cell phone records placed him in her neighborhood at the time of her abduction; and Biela promptly left town when Denison's remains were found and disposed of the vehicle that matched the fibers discovered on Denison's socks. That evidence accounts for the jury's verdict, not Biela's statement that he did not want to answer a question about Denison's murder. Because there is no reasonable probability of a different outcome

SUPREME COURT
OF
NEVADA

(O) 1947A

9

at trial absent Biela's statement, even if it invoked his right to remain silent, the district court did not err in denying this claim.[2]

*Ineffective assistance of trial counsel—Failure to request psychological examination of A.C.*

Biela argues that trial counsel should have sought an independent psychological examination of A.C. because the State employed a psychological expert and had the benefit of bolstering her testimony. We disagree.

Biela failed to demonstrate that trial counsel acted unreasonably in not moving to compel A.C. to undergo a psychological evaluation. At the time of trial, the district court had discretion to order an independent psychological examination if the "defendant present[ed] a compelling reason for such an examination."[3] *Koerschner v. State*, 116 Nev. 1111, 1116, 13 P.3d 451, 455 (2000) (quoting *Washington v. State*, 96 Nev. 305, 307, 608 P.2d 1101, 1102 (1980)); *see Abbott v. State*, 122 Nev. 715, 727, 138 P.3d 462, 470 (2006). Whether the defendant had presented a compelling reason for an examination depended on three factors: (1) whether the State will call or obtain some benefit from a psychological or

---

[2]Biela also claimed that appellate counsel should have challenged this testimony. As he failed to demonstrate a reasonable probability that the testimony affected the outcome at trial, he did not demonstrate that this claim would have had a reasonable probability of success on appeal. *See Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996) (applying *Strickland* to claims of ineffective assistance of appellate counsel).

[3]In 2015, the Legislature removed the district court's authority to compel a victim or witness to undergo a psychological examination in criminal actions involving sexual offenses. NRS 50.700(1).

psychiatric expert, (2) whether the evidence of the crime "is supported by little or no corroboration beyond the testimony of the victim," and (3) whether there is a reasonable basis to believe that the victim's mental or emotional state may have affected his or her veracity. *Koerschner*, 116 Nev. at 1116-17, 13 P.3d at 455. There is no indication from the record that counsel had a reasonable basis or could have found a reasonable basis to suggest that A.C.'s mental or emotional state affected her veracity. On the contrary, counsel believed that A.C. had been sexually assaulted, just by someone other than Biela, and did not question her veracity as much as her memory. As Biela has not identified a reasonable basis to believe that A.C.'s veracity was affected by a mental or emotional condition, he failed to demonstrate that trial counsel was ineffective for failing to seek an independent psychological examination of A.C. Therefore, the district court did not err in denying this claim.

*Ineffective assistance of trial counsel—Failure to object to confrontation violations*

Biela argues that trial counsel should have objected on several occasions when, he asserts, witnesses referred to anonymous tips implicating him in Denison's murder. We disagree.

The testimony was not offered to prove the truth of the matters asserted in the tip and therefore was not objectionable as a confrontation violation on the ground that the tipster was not subject to cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) (recognizing that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"); *see also Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476,

SUPREME COURT
OF
NEVADA

(O) 1947A

484 (2009) ("The threshold question . . . is whether the statement at issue is 'testimonial' *hearsay*." (quoting *Crawford*, 541 U.S. at 68-69 (emphasis added))). The State asked about the anonymous tips while questioning detectives about the course of the investigation and the decisions they had made in conducting that investigation. *See United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) (providing that statements made by a confidential informant do not violate the Confrontation Clause when their sole purpose is to serve as background information to explain why a government official made investigatory decisions). This inquiry was relevant because there was a significant period of time between the discovery of Denison's remains and collection of trace evidence from that crime scene and the eventual focus on Biela as a suspect. Testimony about the tip explained why officers focused their attention on Biela after such a long period of time. Further, testimony about the content of the tip was necessary to explain why the detectives considered the particular tip valuable in comparison to other tips and investigative efforts. Because the grounds that Biela asserts for an objection would have been meritless, the district court did not err in denying these ineffective-assistance claims.[4]

*Ineffective assistance of trial counsel—Failure to object to witness vouching*

Biela argues that trial counsel should have objected to two instances of prosecution witnesses—a psychologist and a detective—vouching for A.C.'s credibility. As neither witness gave their opinion on

---

[4]Biela also contends that appellate counsel should have challenged this testimony. As Biela failed to demonstrate that the testimony was objectionable, he failed to show that appellate counsel neglected to raise a viable claim. *See Kirksey*, 112 Nev. at 998, 923 P.2d at 1114.

whether they believed that A.C. was being truthful, *see Lickey v. State*, 108 Nev. 191, 196, 827 P.2d 824, 827 (1992) (prohibiting lay or expert witness from vouching for the credibility of another); *Smith v. Franke*, 337 P.3d 986, 990 (Or. Ct. App. 2014) (defining witness vouching), we conclude that Biela failed to demonstrate that counsel neglected to raise a meritorious objection.

Dr. Joann Behrman-Lippert, a clinical psychologist who primarily counsels sexual assault victims, testified about the common behavior and reactions of college-age victims of sexual assault and opined that A.C.'s behavior and reactions were consistent therewith. She did not say whether she believed A.C. was telling the truth about the sexual assault, but instead testified about how the victim's behavior was consistent with sexual abuse, which was permissible. See *Perez v. State*, 129 Nev. 850, 861-62, 313 P.3d 862, 870 (2013) (providing that expert is allowed "to testify on the issue of whether a victim's behavior is consistent with sexual abuse, if that testimony is relevant"). While her opinion that A.C.'s behavior and reactions were consistent with sexual assault incidentally corroborates A.C.'s testimony, that fact "does not render [her testimony] inadmissible, since most expert testimony, in and of itself, tends to show that another witness either is or is not telling the truth." *Davenport v. State*, 806 P.2d 655, 659 (Okla. Crim. App. 1991). Because an objection thus would have



been futile, counsel cannot be deemed ineffective for not objecting.[5] The district court therefore did not err in rejecting this claim.[6]

Detective David Jenkins testified about the investigation into A.C.'s sexual assault, which A.C. first reported after viewing the media coverage of Denison's abduction about two months later. He acknowledged that high profile cases can draw a lot of public interest and some people may try to insert themselves into such cases, but he did not believe that A.C. was trying to insert herself into the investigation. The most natural interpretation is that Jenkins was opining that A.C.'s behavior and demeanor were not consistent with people who try to insert themselves into high-profile cases. That opinion is similar to an expert opining that a victim's behavior is consistent with being sexually abused, which does not cross the line to impermissible vouching, *Townsend v. State*, 103 Nev. 113, 118, 734 P.2d 705, 708 (1987). This understanding of Jenkins' testimony is consistent with trial counsel's impression at the time that Jenkins was not

---

[5]The record also indicates that trial counsel had a strategic reason for not objecting to this testimony. *See Darden v. Wainwright*, 477 U.S. 168, 186-87 (1986) (providing that defendant must overcome presumption that challenged conduct constituted sound trial strategy). Trial counsel believed that A.C. had been sexually assaulted, just not by Biela. Counsel's closing argument reflects the defense theory. Because Dr. Behrman-Lippert's testimony did not conflict with that theory of defense, it was not unreasonable for counsel to not object to her testimony.

[6]Biela also contends that appellate counsel should have challenged Dr. Behrman-Lippert's testimony as improperly vouching for A.C.'s credibility. As Biela failed to demonstrate that the testimony was objectionable, he failed to show that appellate counsel neglected to raise a viable claim. *See Kirksey*, 112 Nev. at 998, 923 P.2d at 1114.

 

vouching for A.C.'s credibility, which is more relevant than her contrary impression developed post-trial. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time."). Accordingly, Biela did not overcome the "strong presumption" that trial counsel's conduct fell "within the wide range of reasonable professional assistance." *Id*. Moreover, considering the brevity of Jenkins' testimony in this respect, A.C.'s lengthy and detailed testimony, and the instruction telling the jury that it was the sole arbiter of credibility, Biela failed to demonstrate a reasonable probability of a different outcome at trial had counsel objected. Therefore, the district court did not err in denying this claim.

*Ineffective assistance of trial counsel—Failure to object to the notice in aggravation*

Biela argues that trial counsel should have objected to the State's notice of evidence in aggravation as insufficient to provide notice of "other matter" evidence that the State intended to introduce, particularly a number of prior bad acts that the State offered during the penalty phase. We agree.

The State gave notice that it would rely on evidence presented during the guilt phase to establish the alleged statutory aggravating circumstances. The notice also indicated the State would present other evidence relevant to the sentence, but it did not identify the nature of that evidence. During the penalty hearing, the State introduced testimony about two uncharged incidents in which Biela acted in a violent or threatening




manner. These incidents and the witnesses who testified about them were not mentioned in the notice of evidence in aggravation despite the State's clear duty to provide notice and discovery of bad act evidence it intends to introduce during a penalty hearing. *See Mason v. State*, 118 Nev. 554, 561, 51 P.3d 521, 525 (2002). Trial counsel did not object, indicating at the postconviction evidentiary hearing that the defense was aware of the incidents as a result of their own investigation.[7]

Trial counsel should have objected to the testimony that was not included in the State's notice of evidence in aggravation. SCR 250(4)(f) provides that the notice of evidence in aggravation must "summarize the evidence which the state intends to introduce at the penalty phase of trial . . . and identify the witnesses, documents, or other means by which the evidence will be introduced." The rule's plain language does not limit the notice to only the evidence the State will offer to prove the statutory aggravating circumstances. Reasonably competent counsel in a death penalty case should have known that this court had rejected the narrow reading of the rule advanced in the State's notice. *See Mason*, 118 Nev. at 561, 51 P.3d at 525). Specifically, long before Biela's trial, this court held that the rule's language requiring that the notice summarize "the evidence which the state intends to introduce at the penalty phase of trial" is "plain and without qualification"—"it applies to any evidence which the State

---

[7]Biela also mentions that the State did not provide notice of photographs of Denison and a song written by her brother that it intended to introduce as victim-impact evidence. However, the ineffective-assistance claim is based only on the failure to object to the other matter evidence as improperly noticed.

 

intends to introduce." *Id.* Even when the trial judge *sua sponte* brought up *Mason* and questioned whether the notice in this case was sufficient to allow the State to present other matter evidence, trial counsel still did not object. Counsel's omission in this respect clearly fell below an objective standard of reasonableness.

Nevertheless, Biela has not demonstrated that counsel's deficient performance prejudiced the defense. While the evidence that was not included in the notice is damaging, there is no reasonable probability that the outcome of the penalty hearing would have been different if trial counsel had objected and the trial court had excluded the evidence not included in the notice considering the circumstances of the murder and the statutory aggravating circumstances. Biela abducted Denison from a home, sexually assaulted her, and strangled her. It was not an isolated incident. Instead, as established by three of the statutory aggravating circumstances, Biela had sexually assaulted two other women, one of whom he also abducted before the sexual assault, in the months before he abducted, sexually assaulted, and murdered Denison. Thus, even without the other matter evidence that was not included in the notice, the jury was faced with a defendant who had engaged in a pattern of violent conduct that had escalated to murder. Therefore, the district court did not err in denying this ineffective-assistance claim.

*Ineffective assistance of appellate counsel*

Biela contends that the district court erred in denying claims of ineffective assistance of appellate counsel. To prove ineffective assistance of appellate counsel, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness (deficient

 

performance), and but for counsel's errors, the omitted issue would have had a reasonable probability of success on appeal (prejudice). *Kirksey*, 112 Nev. at 998, 923 P.2d at 1114. Appellate counsel is not required to raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Rather, appellate counsel will be most effective when every conceivable issue is *not* raised on appeal. *Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989).

### Ineffective assistance of appellate counsel—Venue

Biela argues that appellate counsel should have argued that the trial court erred in denying the motion for a change of venue. He asserts that the voir dire transcript evinces pernicious pretrial publicity that necessitated a change in venue. We disagree.

Trial counsel moved for a change of venue before trial had begun and the trial court denied the motion after conducting voir dire. All the prospective jurors indicated that they had been exposed to some media coverage of the case and followed media reports while Denison was missing. Nevertheless, the voir dire transcript does not indicate that the media coverage had become so saturated as to overcome the presumption of impartiality. *See Sonner v. State*, 112 Nev. 1328, 1336, 930 P.2d 707, 712 (1996) (recognizing that a defendant seeking to change venue must not only present evidence of inflammatory pretrial publicity but must demonstrate actual bias on the part of the jury empaneled), *modified on rehearing on other grounds by* 114 Nev. 321, 955 P.2d 673 (1998). And when prospective jurors indicated that they could not put aside what they had learned from the news reports, the district court dismissed them from service. Many prospective jurors indicated that they *could* remain impartial despite the



coverage. No seated juror indicated that the publicity would prevent them from acting impartially. Even where pretrial publicity has been pervasive, this court has upheld the denial of motions for change of venue where the jurors assured the district court during voir dire that they could be fair and impartial in their deliberations. *See id.* at 1336, 930 P.2d at 712-13; *see also Ford v. State*, 102 Nev. 126, 129, 717 P.2d 27, 29 (1986). Based on the trial record, appellate counsel would not have been able to demonstrate that the district court abused its discretion in denying the motion to change venue. *See Ford*, 102 Nev. at 130, 717 P.2d at 29 (reviewing denial of motion for a change of venue for abuse of discretion). Therefore, the district court did not err in denying this claim.

*Ineffective assistance of appellate counsel—Cause challenges to prospective jurors*

Biela argues that appellate counsel should have challenged district court rulings regarding for-cause challenges to several prospective jurors. We disagree. Even if the trial court abused its discretion in denying the challenges, *see Weber v. State*, 121 Nev. 554, 580, 119 P.3d 107, 125 (2005) (applying abuse-of-discretion standard in reviewing decision whether to excuse potential jurors for cause), reversal would only be warranted if the error "result[ed] in an unfair empaneled jury," *Preciado v. State*, 130 Nev. 40, 44, 318 P.3d 176, 178 (2014). Although Biela used peremptory challenges to remove the prospective jurors who were not removed for cause, that fact "does not mean that [he] was denied his right to an impartial jury" so long as "the jury actually seated [was] impartial." *Blake v. State*, 121 Nev. 779, 796, 121 P.3d 567, 578 (2005); *see United States v. Martinez-Salazar*, 528 U.S. 304, 317 (2000) (recognizing that defendant's

(O) 1947A

exercise of peremptory challenge is not impaired when defendant used challenge to remove prospective juror who should have been removed for cause). Biela does not allege that any empaneled juror was unfair or biased. Thus, this court would not have granted any relief had the issue been raised on appeal. Therefore, the district court did not err in denying this claim.

*Cumulative error*

Biela contends that the cumulative effect of trial and appellate counsels' errors prejudiced the defense and therefore warrants reversal of his convictions and sentences. Even assuming multiple instances of deficient performance may be cumulated, *see McConnell v. State*, 125 Nev. 243, 259 n.17, 212 P.3d 307, 318 n.17 (2009), Biela failed to demonstrate prejudice based on the cumulative effect of multiple instances of deficient performance. Biela demonstrated two instances of deficient performance: (1) counsel failed to object to argument about cell phone tower evidence that had not been presented as to the offenses involving E.C., and (2) counsel failed to object to the State's notice of evidence in aggravation. The deficient performance with respect to the aggravation notice occurred during the penalty phase of trial and had no cumulative effect with the other incident of deficient performance, which occurred during the guilt phase. Accordingly, the district court did not err in denying this claim.

*Trial error claims*

Biela argues that the trial court erred in denying his claim that juror misconduct warranted a new trial, the capital sentencing scheme is unconstitutional, and his death sentence violates international law. Because these claims could have been raised on direct appeal and Biela has

SUPREME COURT
OF
NEVADA

(O) 1947A

20

not demonstrated good cause to overcome the procedural default under NRS 34.810(b)(2), the district court properly denied them.

Having considered Biela's arguments and concluding that they do not warrant relief, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Gibbons

_____, J.          _____, J.
Pickering                              Hardesty

_____, J.          _____, J.
Parraguirre                            Stiglich

_____, J.          _____, J.
Cadish                                 Silver

cc:     Hon. Scott N. Freeman, District Judge
        Law Office of Christopher R. Oram
        Edward T. Reed
        Attorney General/Carson City
        Washoe County District Attorney
        Washoe District Court Clerk